**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| In re: | |
|---|---|
| STEVEN P. WEGNER, | Bk. No. 14-10415 |
| Debtor. | Chapter 11 |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 (I) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING; (II) AUTHORIZING THE USE OF CASH COLLATERAL; AND (III) GRANTING ADEQUATE PROTECTION AND POST-PETITION LIENS**

Steven P. Wegner, the debtor in the above-captioned chapter 11 bankruptcy case (the "Debtor"), moves this Court for orders that (i) authorize the Debtor to obtain credit and incur debt pursuant to Sections 105, 363 and 364 of the Bankruptcy Code in accordance with that certain Term Sheet, substantially in the form attached hereto as **Exhibit A** (as the same may be amended, modified or supplemented, the "DIP Term Sheet"), among the Debtor and Katahdin Trust Company ("Katahdin") as lender; (ii) authorize the Debtor to use "cash collateral" as such term is defined in 11 U.S.C. § 363(a); and (iii) grant post-petition liens and waivers to Katahdin as adequate protection for the use of such cash collateral and security for post-petition financing under the DIP Term Sheet. In support of this motion, the Debtor states as follows:

**CONCISE STATEMENT**

1.      Pursuant to Rule 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), below is a concise statement of all material provisions of the DIP Term Sheet:

| **Term** | **Summary** |
|---|---|
| Lender | Katahdin Trust Company [DIP Term Sheet, § 1] |
| Borrower | Steven P. Wegner, Debtor-in-Possession [DIP Term Sheet, § 2] |
| Transaction | Line of Credit [DIP Term Sheet, § 3] |
| Interest Rate | Wall Street Journal Prime + 2.75% with a floor of 6% [DIP Term Sheet, § 4] |
| Cap Amount | $100,000.00 [DIP Term Sheet, § 5] |
| Term | The earlier of: (i) December 31, 2014; (ii) conversion of the Debtor's bankruptcy case (the "Case") to a chapter of the Bankruptcy Code other than chapter 11; (iii) the date on which a plan of reorganization of the Debtor in the Case is substantially consummated; (iv) appointment of a trustee in the Case; (v) sale of any property of the Debtor outside of the ordinary course of business; and (vi) such earlier date as may be set forth in any Order of the Bankruptcy Court.<br><br>Notwithstanding the foregoing, the term of the Line of Credit may, with Bankruptcy Court approval, be extended by written agreement of the Bank and the Borrower as debtor-in-possession or of a trustee appointed in the Case. [DIP Term Sheet, § 8] |
| Payment | Payment of all interest then outstanding payable on the first day of each month during term of the line of credit, interest only payments to be made on the first day of each month; payment of all amounts outstanding at end of term. [DIP Term Sheet, § 6] |
| Late Charges | Late charge equal to 6% of any amount not paid within 10 days fits due date, including payment of all amounts outstanding under the line of credit at the end of its term or prior termination, with a minimum of $10.00 and a maximum of $500.00/charge. [DIP Term Sheet, § 7] |
| Use of Funds | Funds advanced under the line of credit may be used only for expenses and up to the amounts set forth in the Debtor's budget as approved by the Bankruptcy Court and Katahdin. Katahdin need not make advances if, on a weekly basis, there is more than a 10% cumulative net negative cash flow deviation from Debtor's approved budget. [DIP Term Sheet, § 9] |
| Budget | The budget shall be for a period of at least eight (8) weeks, rolling forward (updated) on a bi-weekly basis, subject to Katahdin's approval. Updated budgets must show actual versus projected amounts for all prior weeks. [DIP Term Sheet, § 10] |
| Collateral | Super-priority (including priority over prior loans made by Katahdin) security interests and mortgages pursuant to 11 U.S.C. § 364(d) upon all business assets of the Debtor. [DIP Term Sheet, § 11] |
| 506(c) Waiver | The Debtor waives his rights and potential surcharge claims |

2

| | |
|---|---|
| | against Katahdin under section 506(c) of the Bankruptcy Code for any period during which the Debtor utilizes Katahdin's cash collateral or is authorized to obtain advances from Katahdin. [Proposed Interim Order, ¶ 9] |
| Additional Documents Requested by Katahdin | a. Updated, management-prepared, monthly, store by store and consolidated operating results within 30 days after each month end [DIP Term Sheet, § 12(a)];<br><br>b. 2013 Federal Income Tax returns for the Debtor and for NorthCountry no later than 6/30/2014 [DIP Term Sheet, § 12(b)];<br><br>c. CPA-reviewed financial statements for NorthCountry no later than 6/30/2014 [DIP Term Sheet, § 12(c)];<br><br>d. Disclosure of any past due amounts owing for taxes (including but not limited to, state sales tax, state or federal income tax, payroll and unemployment taxes, real and personal property taxes) no later than end of the initial period of any Bankruptcy Court order approving use of cash collateral [DIP Term Sheet, § 12(d)];<br><br>e. Copies of U.S. Trustee's reports when filed [DIP Term Sheet, § 12(e)];<br><br>f. Proof of insurance coverage on all collateral [DIP Term Sheet, § 12(f)]; and<br><br>g. Borrower shall maintain all debtor-in-possession deposit accounts at Katahdin (if permitted by the applicable U.S. Trustee guidelines or authorized by the Bankruptcy Court). |
| Acknowledgments, Waivers, and Releases | a. Acknowledgement by Borrower of liability, through assumption and/or guaranty, of all obligations of NorthCountry to Katahdin [DIP Term Sheet, § 13(d)];<br><br>b. Acknowledgment of extent, amount, validity, perfection, and priority of all outstanding obligations of the Debtor and/or NorthCountry to Katahdin, as well as of all collateral interests securing the same [DIP Term Sheet, § 13(e)];<br><br>c. Acknowledgment of no defenses, counterclaims, or offsets against any outstanding claim of Katahdin against the Debtor or NorthCountry (as defined herein) [DIP Term Sheet, § 13(f)]; and<br><br>d. Release of all claims of the Debtor and/or NorthCountry |

| | |
|---|---|
| | against Katahdin, including, but not limited to, avoidance actions [DIP Term Sheet, § 13(g)]. |
| Additional Terms and Conditions | a. Interim approval of use of cash collateral and of the line of credit by the Bankruptcy Court on terms and conditions acceptable to Katahdin no later than 6/4/2014 [DIP Term Sheet, § 13(a)]; |
| | b. Interim approval of use of cash collateral and of the line of credit to run for no more than thirty (30) days; approval after that date to run through ninety (90) days from the date of the filing of the Case with the Bankruptcy Court [DIP Term Sheet, § 13(b)]; |
| | c. Plan of reorganization and disclosure statement with respect to the same and materially consistent with the Bankruptcy Code to be filed with the Bankruptcy Court by the Debtor no later than ninety (90) days from the date of the filing of the Case with the Bankruptcy Court [DIP Term Sheet, § 13(c)]; |
| | d. Creditors' committee or trustee appointed in the case to have up to no more than seventy (70) days from date of appointment to: (i) object to extent, amount, validity and priority of all outstanding obligations of the Debtor and/or NorthCountry to Katahdin, as well as of all collateral interests securing the same; (ii) assert any defenses, counterclaims, or offsets against any outstanding claim of Katahdin against the Debtor or NorthCountry; (iii) assert any other claims of the Debtor and/or NorthCountry against Katahdin, including, but not limited to, avoidance actions [DIP Term Sheet, § 13(h)]; |
| | e. Each advance request to include certification from the Debtor or John Thibodeau showing the proposed uses of the advanced funds in a manner sufficient to permit Katahdin to determine that the funds will be used in a manner consistent with the budget [DIP Term Sheet, § 13(i)]; |
| | f. The Debtor to permit Katahdin to communicate with broker employed to obtain purchasers for property of the Debtor, and to communicate with Burger King Corp., provided that the Debtor or his professionals shall be entitled to participate in all such communications [DIP Term Sheet, § 13(j)]; |
| | g. Until the confirmation of a plan, the Debtor to continue to list for sale and market all restaurants [DIP Term Sheet, § 13(k)]. |
| Events of Default | a. Failure to comply with any term of the line of credit [DIP |

|  | Term Sheet, § 14(a)]; |
|--|--|
|  | b. Failure to comply with the terms of any Orders of the Bankruptcy Court approving the line of credit, permitting use of cash collateral, or filing a plan and disclosure statement [DIP Term Sheet, § 14(b)]; |
|  | c. Occurrence of more than 15% cumulative net negative Ending Cash Balance deviation from the Debtor's approved budget, with deviations tested on a weekly basis; occurrence of more than 10% cumulative net negative Ending Cash Balance deviation from the Debtor's approved budget, with deviations tested on a monthly basis [DIP Term Sheet, § 14(c)]; |
|  | d. Conversion of the Case to one arising under any chapter of the Bankruptcy Code other than chapter 11 [DIP Term Sheet, § 14(d)]; |
|  | e. Dismissal of the Case [DIP Term Sheet, § 14(e)]; or |
|  | f. Appointment of a trustee in the Case [DIP Term Sheet, § 14(f)]. |

**CONSPICUOUS NOTICE PURSUANT TO D. ME. LBR 4001-2(d)**

2.    In accordance with Local Rule 4001-2(d), notice is hereby given that the DIP Term Sheet contains the following terms and conditions:

   a. **An acknowledgement of the validity, amount, perfection, priority, extent or enforceability of a secured claim [DIP Term Sheet, § 13(e)];**

   b. **A release of claims or waiver of defenses by the Debtor [DIP Term Sheet, §§ 13(d), (f), and (g)]; and**

   c. **A post-petition lien to secure a claim of a secured creditor [DIP Term Sheet, § 11].**

3.    The Debtor requests that the Court approve these terms and conditions which vary from the requirements of Local Rule 4001-2(c).  The terms and conditions of

5

**the DIP Term Sheet do not contain any of the provisions described in Local Rule 4001-2(c)(4) or (5).**

## JURISDICTION AND VENUE

4. This Court has jurisdiction to entertain this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 361, 362, 363 and 364, Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the District of Maine (the "Local Rules").

## BACKGROUND

5. On May 29, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief commencing a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maine (the "Bankruptcy Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is operating his business as a debtor-in-possession. As of the filing of this Motion, no creditors' committee, trustee, or examiner has been appointed in this chapter 11 case.

6. As of the Petition Date, the Debtor owns and operates eight fast-food restaurants in eight different cities or towns in Maine (collectively, the "BK Restaurants") under eight separate franchise agreements with Burger King Corporation ("BKC"), a Florida corporation with a principal place of business of 5505 Blue Lagoon Drive, Miami, Florida. The Debtor, as owner and operator of the BK Restaurants, employs approximately 195 employees, some of whom are part-time employees, in the various locations of the BK Restaurants.

7.   The Debtor is the President and sole shareholder of NorthCountry Management Group, Inc. ("NorthCountry"), a Maine corporation with a principal place of business of 24 Spruce Street, Bangor, Maine.  Certain of the property of the Debtor's estate previously was owned and/or operated by NorthCountry; however, prior to the commencement of this chapter 11 case, all of NorthCountry's personal and real property, leases, and licenses were transferred to the Debtor and, as a result, are property of the Debtor's estate.

8.   For the last three years or so, the BK Restaurants have experienced a decline in same store sales.  Gross revenues have been adversely affected by national advertising and promotional campaigns that have had limited success.  The combination of these issues resulted in an inability to service long term debt, including the debts owed to Katahdin and to BKC.

9.   On May 21, 2014, BKC issued a default notice to the Debtor (the "Default Notice") pursuant to section 18(a)(7) of those certain franchise agreements (the "Franchise Agreements") entered into between the Debtor and BKC for each of the BK Restaurants, due to the Debtor's "fail[ure] to pay when due any Royalty or Advertising and sales promotion Contribution required to be paid" under the Franchise Agreements.  Under section 18(a)(7) of the Franchise Agreements, the Debtor had ten (10) days to cure the default, but was unable to do so, creating the immediate need to file this chapter 11 case to preserve the value of the Debtor's businesses.

**PREPETITION CAPITAL STRUCTURE**

10.  Pursuant to that certain Commitment Letter (the "First Letter") dated as of June 26, 2013 entered into between Katahdin Trust Company ("Katahdin") as lender, the U.S. Small Business Administration (the "SBA") pursuant to section 7(a) of the Small Business Act as amended (the "Act"), as guarantor, and NorthCountry, as borrower, NorthCountry obtained a

7

loan in the amount of $3,106,600 (the "First Loan").  The Debtor personally guaranteed NorthCountry's obligations in connection with the First Loan.

11. Pursuant to that certain Commitment Letter (the "Second Letter") dated as of June 26, 2013 entered into between Katahdin, the SBA, and NorthCountry, NorthCountry obtained a loan in the amount of $1,346,500 (the "Second Loan" and together with the First Loan, the "Katahdin Loans").  The Debtor personally guaranteed NorthCountry's obligations in connection with the Second Loan.

12. To secure the First Loan and/or the Debtor's guaranty of the First Loan, NorthCountry and/or the Debtor granted to Katahdin the following security interests and liens:

   a. First mortgage on the land and buildings (fee simple) located at:

      i. 12 Stillwater Ave., Orono, Maine (the "Orono Restaurant");
      ii. 254 North St., Calais, Maine (the "Calais Restaurant");
      iii. 205 High St., Ellsworth, Maine (the "Ellsworth Restaurant");
      iv. 24 Spruce St., Bangor, Maine (the "Bangor Office");

   b. First leasehold mortgage interest, and/or assignment of tenant's leasehold interest, in the land and buildings on leased land located at:

      i. 118 North St., Houlton, Maine (the "Houlton Restaurant");
      ii. 631 Hogan Rd., Bangor, Maine (the "Bangor Restaurant");
      iii. 49 Camden St., Rockland, Maine (the "Rockland Restaurant");
      iv. 795 Main St., Presque Isle, Maine (the "Presque Isle Restaurant");
      v. 162 Bennett Dr., Caribou, Maine (the "Caribou Restaurant");

   c. Assignment of all leases and rents for all property locations, including:

      i. the Orono Restaurant;
      ii. the Calais Restaurant;
      iii. the Ellsworth Restaurant;
      iv. the Bangor Office;
      v. the Houlton Restaurant;
      vi. the Bangor Restaurant;
      vii. the Rockland Restaurant;
      viii. the Presque Isle Restaurant;
      ix. the Caribou Restaurant;

    d. Life insurance in the amount of $1,000,000 on the Debtor to be assigned to Katahdin; and

    e. First security interest in all accounts, accounts receivable, inventory, machinery, equipment, furniture, fixtures, and general intangibles, now owned or hereafter acquired, wherever located, and used or to be used in the BK Restaurants.

*See* First Letter attached hereto as **Exhibit B**.

13. To secure the Second Loan and/or the Debtor's guaranty of the Second Loan, NorthCountry and/or the Debtor granted to Katahdin the following security interests and liens:

    a. Second mortgage on the land and buildings (fee simple) located at:

        i. the Orono Restaurant;
        ii. the Calais Restaurant;
        iii. the Ellsworth restaurant;
        iv. the Bangor Office;

    b. Second leasehold mortgage interest, and/or assignment of tenant's leasehold interest, in the land and buildings on leased land located at:

        i. the Houlton Restaurant;
        ii. the Bangor Restaurant;
        iii. the Rockland Restaurant;

    c. Assignment of all leases and rents for all property locations, including:

        i. the Orono Restaurant;
        ii. the Calais Restaurant;
        iii. the Ellsworth Restaurant;
        iv. the Bangor Office;
        v. the Houlton Restaurant;
        vi. the Bangor Restaurant;
        vii. the Rockland Restaurant;
        viii. the Presque Isle Restaurant;
        ix. the Caribou Restaurant;

    d. Life insurance in the amount of $1,000,000 on the Debtor to be assigned to Katahdin;

    e. Second security interest in all accounts, accounts receivable, inventory, machinery, equipment, furniture, fixtures, and general intangibles, now owned

or hereafter acquired, wherever located, and used or to be used in the BK Restaurants.

*See* Second Letter attached hereto as **Exhibit C**.

14. The Debtor has reason to believe that Katahdin perfected its liens in the above-described collateral by recording such liens with the registries of deeds for the relevant counties, and that Katahdin perfected its security interests by filing UCC-1 financing statements with the office of the Secretary of State for the State of Maine.

15. Because the Debtor's obligations to Katahdin under the Katahdin Loans are secured by first and second priority liens on and security interests in substantially all of the Debtor's real and personal property, including cash collateral, the Debtor presently has no unencumbered cash to operate his businesses. Given these circumstances, the Debtor has an immediate need to use cash collateral to continue operations and preserve the going concern value of his estate for the benefit of all creditors. However, the use of cash collateral generated from the operation of the BK Restaurants may be insufficient to carry the Debtor through a chapter 11 reorganization process; therefore, the Debtor sought and has obtained an offer of post-petition financing from Katahdin—as reflected in the DIP Term Sheet—which must be approved on an expedited basis to ensure that the Debtor may continue operations and preserve the going concern value of his estate for the benefit of all creditors.

## RELIEF REQUESTED

16. Pursuant to sections 105(a), 361, 362, 363, and 364 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, the Debtor requests interim and final orders (i) authorizing the Debtor to obtain post-petition financing in the amount of up to $100,000.00, pursuant to the DIP Term Sheet; (ii) authorizing the use of Cash Collateral; and (iii) approving post-petition liens, waivers, and adequate protection for Katahdin as proposed herein.

17. A budget reflecting the proposed use of the cash collateral and draw on the post-petition line of credit described in the DIP Term Sheet is attached hereto as **Exhibit D** (the "Budget").

18. A proposed form of order approving the relief requested herein on an interim basis, pending a final hearing, is annexed hereto as **Exhibit E** (the "Proposed Order").

## BASIS FOR REQUESTED RELIEF

**A.    Cash Collateral**

19. Section 363(c)(2) allows the Debtor to use cash collateral in the ordinary course of business only if (a) "each entity that has an interest in such cash collateral consents," or (b) "the court, after notice and a hearing, authorizes such use . . . ." 11 U.S.C. § 363(c)(2).

20. Bankruptcy Rule 4001(b) requires that a motion to use cash collateral contain:

   a. the name of each entity with an interest in the cash collateral;
   b. the purposes for the use of the cash collateral;
   c. the material terms, including duration, of the use of the cash collateral; and
   d. any liens, cash payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral or, if no additional adequate protection is proposed, an explanation of why each entity's interest is adequately protected.

Fed. R. Bankr. P. 4001(b).

21. What constitutes adequate protection must be decided on a case-by-case basis. *See* MNBank Dallas, N.A. v. O'Conner (In re O'Connor), 808 F.2d 1393, 1396 (l0th Cir. 1987); Martin v. U.S. (In re Martin), 761 F.2d 472 (8th Cir. 1985). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See* In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted).

11

22. In the ordinary course of operations, the Debtor generates cash from the BK Restaurants (the "Cash Collateral"). The Debtor has an immediate need to use the Cash Collateral to maintain the value of his business assets, provide financial information, pay necessary employees, payroll taxes, inventory suppliers and other vendors, overhead, and other expenses necessary to maximize the value of the Debtor's assets. Further details on the terms and duration of the Debtor's planned use of the Cash Collateral are included on the Budget attached as Exhibit D.

23. Katahdin, under the terms of the Katahdin Loans, has a valid and perfected security interest and lien in, among other things, the Cash Collateral pursuant to section 552(b)(1) of the Bankruptcy Code. Therefore, Katahdin is entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Cash Collateral. Accordingly, the Debtor has agreed, subject to this Court's approval, to provide Katahdin with: (a) a waiver of the Debtor's rights and potential surcharge claims under section 506(c) of the Bankruptcy Code for any period during which the Debtor utilizes Katahdin's Cash Collateral or is authorized to obtain advances from Katahdin (the "Surcharge Waiver") in order to obtain Katahdin's consent to the use of Cash Collateral; and (b) replacement liens and security interests in all of the Debtor's assets, whether such assets are now owned or held by the Debtor or hereafter come to be owned or held by the Debtor, including without limitation, cash, inventory, general intangibles, accounts receivable, cash value of life insurance, machinery, equipment, furniture, fixtures, and all other tangible and intangible property of the Debtor (but not including causes of action arising under chapter 5 of the Bankruptcy Code and retainers of professionals retained by the Debtor prior to or after the filing of this Case), together with any and all additions and accessions thereto and replacements and proceeds (including without limitation insurance

proceeds), products thereof, acquired or created by the Debtor after the filing of this Case (the "Collateral") (the liens granted herein shall be referred to as "Replacement Liens"), such Replacement Liens being in amount equal to the amount of Cash Collateral used by the Debtor and said Replacement Liens shall have the same validity, priority, and perfection in and to the foregoing Collateral as the liens of Katahdin Trust Company had as of the Filing Date (the Surcharge Waiver and Replacement Liens hereinafter referred to collectively as "Adequate Protection"). Katahdin has agreed to consent to the usage of its Cash Collateral on the condition that the Adequate Protection is approved, and on the further condition that if, notwithstanding the grant of Adequate Protection, Katahdin will have a claim allowable under 11 U.S.C. § 507(a)(2) arising from the use of cash collateral, then, pursuant to § 507(b), such claim shall have priority over all other claims allowable under said section, except any fees which are due, have accrued, accrue, and/or become due pursuant to 28 U.S.C. § 1930.

    **B.**    **DIP Financing**

24.    Pursuant to the terms of the DIP Term Sheet, the Debtor proposes to obtain a post-petition line of credit of up to $100,000.00 from Katahdin by granting Katahdin a valid and perfected super-priority lien (the "Post-Petition Lien") on all of the same Collateral as is subject to the Replacement Liens, as described herein.

25.    Pursuant to section 364(d) of the Bankruptcy Code, a debtor may only incur debt secured by a senior lien on property of the estate that is already subject to a lien if, after notice and a hearing, the debtor is able to show that: (a) the debtor was unable to obtain a loan under any other subsection of section 364; and (b) there is "adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. § 364(d)(1). Courts generally defer to a debtor or trustee's business

judgment in granting post-petition financing under section 364(d). *See* In re DB Capital Holdings, LLC, 454 B.R. 804, 822 (Bankr. D. Colo. 2011) (citing cases). In considering sources of post-petition financing, the debtor or trustee has "no duty to seek credit from every possible lender," and this is particularly true in cases where "time is of the essence." In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986).

26. The line of credit provided by the DIP Term Sheet satisfies the requirements of section 364(d), and the Debtor has exercised his sound business judgment in negotiating and agreeing to the terms of the DIP Term Sheet. Katahdin, as the current holder of the first priority liens on the Collateral, has consented to the Post-Petition Lien. By obtaining the post-petition financing provided by the DIP Term Sheet, the Debtor will be in a position to preserve and maximize the value of his assets for the benefit of all creditors. The terms of the DIP Term Sheet are fair, reasonable, and adequate given the Debtor's circumstances, the need for post-petition liquidity, and the absence of alternative sources of financing. The terms were negotiated by the Debtor and Katahdin in good faith and at arm's-length, and the DIP Term Sheet represents the best terms available to the Debtor for obtaining post-petition financing.

**INTERIM RELIEF**

27. Bankruptcy Rules 400l(b) and (c) provide that a final hearing on a motion to use cash collateral and/or obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. *See* Fed. R. Bankr. P. 4001(b)(2), (c)(1)(C). Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate.

28. The Debtor requests that the Court hold and conduct an interim hearing immediately to consider entry of the proposed interim order authorizing the Debtor from and after the entry of the interim order until the final hearing to (i) use Cash Collateral, and (ii) borrow under the DIP Term Sheet, all in accordance with the Budget. This relief will enable the Debtor to operate his businesses in a manner that will permit him to preserve and maximize value and therefore avoid immediate and irreparable harm and prejudice to his estates and all parties in interest, pending the final hearing.

## WAIVER OF STAY

29. To implement the foregoing, the Debtor seeks a waiver of any otherwise applicable stay under Bankruptcy Rule 6004(h).

## NOTICE

30. Pursuant to the requirements of Bankruptcy Rule 4001 and Local Rule 4001-2, notice of this Motion was served on the following parties on the date and in the manner set forth in the certificate of service: (a) the United States Trustee; (b) the non-insider holders of the twenty (20) largest unsecured claims against the Debtor or, if applicable, the lawyers representing such holders; (c) any federal or state taxing authority having a claim against the Debtor; (d) Katahdin Trust Company; (e) Bangor Savings Bank; (f) the Small Business Administration; and (g) Burger King Corporation.

[Remainder of page left intentionally blank.]

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order (i) authorizing the Debtor to use Cash Collateral in accordance with the proposed Budget; (ii) approving the DIP Term Sheet and authorizing the Debtor to obtain financing under the same; (iii) granting the Adequate Protection and Post-Petition Lien to Katahdin; (iv) scheduling a hearing to consider the relief requested herein on a final basis, and (v) granting such other and further relief as the Court deems just and proper.

Dated: May 29, 2014                             STEVEN P. WEGNER

                                                By his attorney:

                                                /s/ *Michael A. Fagone*
                                                Michael A. Fagone, Esq.
                                                BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
                                                100 Middle Street
                                                P.O. Box 9729
                                                Portland, ME 04104
                                                Telephone: (207) 774-1200
                                                Facsimile: (207) 774-1127
                                                E-mail: mfagone@bernsteinshur.com