**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>STEVEN P. WEGNER,<br><br>  Debtor. | Bk. No. 14-10415<br>Chapter 11 |

**ORDER GRANTING MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO
11 U.S.C. §§ 105, 361, 362, 363, AND 364 (I) AUTHORIZING THE DEBTOR TO
OBTAIN POST-PETITION FINANCING; (II) AUTHORIZING THE
USE OF CASH COLLATERAL; AND (III) GRANTING ADEQUATE
PROTECTION AND POST-PETITION LIENS**

This matter having come before the Court on Steven P. Wegner's (the "Debtor") *Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 (I) Authorizing the Debtor to Obtain Post-Petition Financing; (II) Authorizing the Use of Cash Collateral; and (III) Granting Adequate Protection and Post-Petition Liens* [D.E. 6] (the "Motion"), after such notice and opportunity for hearing as is required under 11 U.S.C. §§ 101 et seq. (the "Code") and the Federal Rules of Bankruptcy Procedure; this Court having conducted a preliminary hearing on the Motion on June 3, 2014, and a final hearing on the Motion on June 25, 2014; and it appearing that no other notice need be given; and no objections having been filed to the relief sought in the Motion, other than the Limited Objection filed by Maines Paper & Food Service - New England, Inc., which Limited Objection has been resolved through entry of this Order in its current form; and after due deliberation, and sufficient cause appearing therefore, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1.  The Motion is granted pursuant to Fed. R. Bankr. P. 4001(b)(2) and Fed. R. Bankr. P. 4001(c)(2), on the terms set forth herein.

2. The Debtor is authorized to use Cash Collateral in the amounts and for the purpose set forth on the budget attached hereto as **Exhibit A** (the "Budget") through September 16, 2014.

3. The Debtor is also authorized to obtain credit from Katahdin, on the terms set forth in the DIP Term Sheet, through September 16, 2014, in order to satisfy its obligations as set forth in the Budget. Any post-petition extensions of credit made by Katahdin pursuant to the DIP Term Sheet will be protected by 11 U.S.C. § 364(e).

4. As collateral for all credit granted, or to be granted, to the Debtor by Katahdin as set forth in the DIP Term Sheet and this Order, together with all interest, fees (including reasonable legal fees), expenses and all other sums and charges at any time or from time to time payable by the Debtor in connection therewith, and as adequate protection for Debtor's use of Katahdin's cash collateral, as well as of Katahdin's interests in other property of the estate, Katahdin shall have, and is hereby granted, valid, binding and enforceable liens, security interests and mortgages (collectively, the "Liens") upon all property of the estate used in the operation of the Debtor's businesses (the "Collateral"). The Collateral shall include, but is not limited to, all interests of the Debtor in cash, inventory, general intangibles, accounts receivable, cash value of life insurance, machinery, equipment, furniture, fixtures, real estate, leaseholds, leases, deposit accounts, instruments, securities, security entitlements, and all other tangible and intangible property of the Debtor used in the operation of the Debtor's businesses (but not including (i) causes of action arising under chapter 5 of the United States Bankruptcy Code and (ii) retainers paid to professionals employed by the Debtor, whether such retainers were paid pre-petition or post-petition), together with any and all additions and accessions thereto and replacements and proceeds (including without limitation insurance proceeds), products thereof,

acquired or created by the Debtor after the date of filing this case. Pursuant 11 U.S.C. §§ 363(e) and 364(d), these Liens shall be senior and prior to all other liens, mortgages, security and other interests in, and claims against Collateral, including any interest in the Collateral which collateralizes prior loans made by Katahdin. For the avoidance of doubt, the Liens shall not attach to (i) causes of action arising under chapter 5 of the United States Bankruptcy Code or (ii) retainers paid to professionals employed by the Debtor, whether such retainers were paid pre-petition or post-petition.

5. Debtor shall concurrently herewith or hereafter, as reasonably requested by Katahdin, undertake such actions and execute and deliver to Katahdin such documents as Katahdin may request to effectuate, evidence, confirm, validate or perfect the Liens, and to evidence the borrowings permitted under the terms of this Order including, without limitation, line of credit agreements, UCC-1 financing statements, mortgages, and amendments. All Liens and such borrowings shall be and hereby are deemed to be fully valid, binding, and perfected without the necessity of any further Court Order or documentation, and without the necessity of any public filing. To the extent, however, that Katahdin, in its sole discretion, deems it necessary or desirable to make such public filings, it may do so, the making of those filings shall not constitute a violation of the stay imposed by 11 U.S.C. § 362, and such filings shall be deemed to have been made at the time and on the date of the entry of this Order notwithstanding the actual date on which the same may actually be made. Katahdin may, in its discretion, file a certified copy of this Order in any filing or recording office in any jurisdiction in which the Debtor has or maintains an office or resides, or where any of the Collateral may be located.

6. In addition to the Liens, as adequate protection for use of cash and other collateral by the Debtor as provided in this Order, and for the limited obligations of the Debtor with respect

to any credit granted to the Debtor by Katahdin post-petition as provided by this Order, Katahdin shall have a superpriority administrative expense claim pursuant to 11 U.S.C. §§ 363(e), 364(c)(1), and 507(b) to the extent that the Liens are insufficient to provide adequate protection to Katahdin, which administrative expense shall have priority over all other all other administrative expenses in this case other than any quarterly fees which are and/or become due to the United States Trustee pursuant to 28 U.S.C. § 1930.  Nothing in this Order will operate to limit the asserted claims of Maines Paper & Food Service - New England, Inc. ("Maines") under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e ("PACA").  The rights and positions of all parties (including without limitation the Debtor, Katahdin Trust Company, and Maines) with respect to any PACA claims asserted by Maines in this chapter 11 case are hereby preserved.

       7.     No other lien, mortgage, or security interest in or upon the Collateral shall be granted or allowed with a priority superior or *pari passu* to the first-priority of the Liens, granted to Katahdin in this Order.  No claim or expense, administrative or otherwise, other than any fees which are due and/or become due pursuant to 28 U.S.C. § 1930, shall be granted or allowed priority superior to or *pari passu* with the priority of the administrative expense claims granted to Katahdin pursuant to this Order.  In no event shall any Lien be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under 11 U.S.C. § 551, and in no event shall any person or entity who pays (or through the extension of credit to any Debtor, causes to be paid) any portion of any debt of the Borrower to Katahdin be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon, Katahdin by the terms of this Order, until such time as all of such debt is indefeasibly paid in full in cash.

8. Except as may otherwise be agreed in writing by Katahdin, the Debtor shall maintain all debtor-in-possession deposit accounts at Katahdin to the extent permitted by applicable U.S. Trustee guidelines.

9. Consent to entry of this Order by Katahdin does not constitute consent to the imposition of any surcharge under 11 U.S.C. § 506(c). Neither the Debtor nor any other representative of the Debtor's estate shall have any right to assert any surcharge claims against Katahdin or its collateral under § 506(c) for any expense incurred or arising during through the completion of the hearing provided for in Section 12 of this Order.

10. The Debtor has stipulated to the following, which stipulations, except to the extent provided in Section 11 of this Order, are binding upon the Debtor and the estate:

a. The obligations of the Debtor and of NorthCountry Management Group, Inc. (the "Corporation") under the terms of the First Loan and the Second Loan (as those terms are defined in the Motion) (collectively, the "Prior Loans"), and under the terms of the documents (the "Prior Loan Documents") evidencing, guarantying, securing, or otherwise relating to the either of the Prior Loans, are valid, proper, legal, binding and enforceable in accordance with their respective terms and for the amounts claimed by Katahdin, except to the extent modified or prohibited by the Bankruptcy Code.

b. All of the rights, titles, interests, actions, causes of action, suits, damages, lost profits, costs, fees, attorneys' fees, interest, penalties, disbursements, demands and claims of every kind and nature whatsoever, whether now or formerly existing or made, of Katahdin under, pursuant or related to the either of the Prior Loans, whether existing or made under or pursuant to law and/or equity, were and are valid, proper and enforceable in accordance with their terms and at law or in equity.

5

c. The Debtor has ratified and confirmed all of his obligations under or pursuant to either of the Prior Loans and the Prior Loan Documents, and has assumed all obligations of the Corporation under the terms of those Loans and Documents.

d. The Debtor has no claim, cause of action, counterclaim, offset, right of recoupment, reduction, or defense of any kind, whether directly or indirectly, or as guarantor, promisor, or party assuming obligations of the Corporation, as against or related in any way to Katahdin, the Prior Loans, or the Prior Loan Documents, and the Borrower has waived and released any such claim, cause of action, counterclaim, offset, right of recoupment, reduction, or defense of any kind to the extent that such may exist as of the date of this Order.

e. The amounts owed to Katahdin under, pursuant and/or related in any way to either of the Prior Loans or any of the Prior Loan Documents, or the obligations evidenced by the Prior Loan Documents, are owed to Katahdin absolutely and such amounts and all rights of Katahdin under, pursuant or related to the either of the Prior Loans or any of the Prior Loan Documents, and the loans and obligations evidenced by the Prior Loan Documents, are not subject to any claim, cause of action, counterclaim, offset, right of recoupment, reduction, or defense of any kind by the Debtor and/or the Corporation, by virtue of anything that has occurred or not occurred, or been done or not done, up to the date of this Order.

f. All liens, mortgages and security interests granted to Katahdin in the Loan Documents are valid, duly perfected and enforceable in accordance with their respective terms and conditions except to the extent modified or prohibited by the Bankruptcy Code, and the interests granted to Katahdin in those documents are superior to and have priority

over all other interests of any entity other than Katahdin in, to, and upon the collateral to which they refer, except: (i) any real or personal property tax liens; and (ii) as otherwise permitted in the Prior Loan Documents.

g.      All transfers, obligations and conveyances made to or for the benefit of Katahdin in connection with, or relating to, either of the Prior Loans or any loan and obligations evidenced by any of the Prior Loan Documents were made or incurred for reasonably equivalent value and with no actual intent to hinder, delay or defraud any past, present or future creditor of (or any other entity) the Corporation and/or the Debtor, and any entity to which the Corporation and/or the Debtor was, is or may become indebted.  No such transfer, obligation or conveyance is avoidable pursuant to 11 U.S.C. §§ 502(d), 544, 545, 547, 548, 549, 550 or 553, or pursuant to any fraudulent transfer, preference or other claim or action which seeks to avoid or set aside transfers of any property of the Corporation or the Debtor as a fraudulent transfer, preference, or for any other reason, and the Debtor has waived and released any such claim, cause of action, counterclaim, offset, right of recoupment, reduction, or defense of any kind to the extent that such may exist as of the date of this Order.

11.      The U.S. Trustee, any creditors' committee, or trustee appointed in the case shall have up to 70 days, in the case of the U.S. Trustee, from June 6, 2014 (unless retention of committee counsel has previously been approved by this Court or a trustee has been appointed during that 70 day period), in the case of a committee, from the date on which this Court approves retention of counsel for that committee, or, in the case of a trustee, from the date of appointment of that trustee to: (i) object to extent, amount, validity and priority of all outstanding obligations of the Debtor and/or the Corporation to Katahdin, as well as of all collateral interests

securing the same; (ii) assert any defenses, counterclaims, or offsets against any outstanding claim of Katahdin against the Debtor or the Corporation; (iii) assert any other claims of the Debtor and/or Corporation against Katahdin including without limitation surcharge claims under § 506(c) (other than those described in Section 9 hereof, which have been waived), avoidance actions pursuant to 11 U.S.C. §§ 502(d), 544, 545, 547, 548, 549, 550 or 553, or pursuant to any fraudulent transfer, preference or other claim or action which seeks to avoid or set aside transfers of any property of the Corporation or the Debtor as a fraudulent transfer, preference, or for any other reason.

12. Further hearing on the Motion, including, but not limited to, any extension of the period within which cash collateral may be used and the Debtor may continue to borrow from Katahdin as provided in this Order, is scheduled for September 16, 2014, at 9:00 a.m. at the United States Bankruptcy Court for the District of Maine, in Bangor, Maine. Objections, if any, to any such extension shall be filed and served on or before September 4, 2014.

Dated:  June 25, 2014

_____
The Honorable Louis H. Kornreich
United States Bankruptcy Judge


EXHIBIT A

**NORTH COUNTRY MANAGEMENT GROUP**
**90 Day Cash Collateral Budget - Scenario 8 Stores**
**As of June 23, 2014 - DRAFT**

| | Week Begin 6/30/2014 | Week Begin 7/7/2014 | Week Begin 7/14/2014 | Week Begin 7/21/2014 | Week Begin 7/28/2014 | Week Begin 8/4/2014 | Week Begin 8/11/2014 | Week Begin 8/18/2014 | Week Begin 8/25/2014 |
|---|---|---|---|---|---|---|---|---|---|
| | 5 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| **Beginning Cash** | $97,604 | $108,314 | $3,275 | $19,654 | $12,487 | $75,747 | $64,945 | $49,866 | $60,122 |
| **Cash Receipts** | | | | | | | | | |
| Sales | 132,758 | 184,748 | 184,748 | 184,748 | 184,748 | 202,217 | 202,217 | 202,217 | 202,217 |
| Misc Income | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other - KTC DIP Loan | 0 | | | | | | | | |
| Total Cash Receipts | 132,758 | 184,748 | 184,748 | 184,748 | 184,748 | 202,217 | 202,217 | 202,217 | 202,217 |
| **Cash Disbursements - Operations** | | | | | | | | | |
| Food cost | | 36,324 | 61,522 | 97,846 | | 100,101 | | 100,101 | |
| Paper cost | | 8,550 | | 8,550 | | 8,966 | | 8,966 | |
| Crew Payroll | 31,657 | 36,257 | 36,257 | 36,257 | 36,257 | 39,856 | 39,856 | 39,856 | 39,856 |
| Management Payroll | 3,859 | 4,823 | 4,823 | 4,823 | 4,823 | 4,823 | 4,823 | 4,823 | 4,823 |
| Group Insurance | 6,669 | | | | 6,669 | | | | |
| Payroll Taxes | 3,221 | 8,306 | 8,306 | 8,306 | 8,306 | 9,099 | 9,099 | 9,099 | 9,099 |
| Uniforms | 861 | | | | 888 | | | | |
| Operating Supplies | 1,474 | 1,715 | 1,715 | 1,715 | 1,715 | 1,770 | 1,770 | 1,770 | 1,770 |
| Repair and Maintenance | 4,638 | 5,393 | 5,393 | 5,393 | 5,393 | 5,560 | 5,560 | 5,560 | 5,560 |
| Office Expense | | | 692 | | | | 716 | | |
| Cash over/short | 100 | 116 | 116 | 116 | 116 | 120 | 120 | 120 | 120 |
| Miscellaneous | 649 | 754 | 754 | 754 | 754 | 777 | 777 | 777 | 777 |
| Training | | | | 398 | | | | 411 | |
| Controllable - Sub Total | 53,128 | 102,238 | 119,579 | 164,159 | 64,922 | 171,072 | 62,721 | 171,483 | 62,005 |
| Utilities | 9,708 | 24,057 | 24,057 | 10,320 | 10,320 | 10,447 | 10,447 | 10,447 | 10,447 |
| Refuse | 1,466 | 1,702 | 1,702 | 1,702 | 1,702 | 1,637 | 1,637 | 1,637 | 1,637 |
| Promotion | | 6,638 | | | | | 6,843 | | |
| Rent | 25,766 | | | | 26,540 | | | | |
| Taxes and Licenses | 0 | 883 | 9,423 | 0 | 0 | 883 | 0 | 0 | 0 |
| Liability Insurance | | | | | | | | | |
| Worker's Comp Insuranse | | | 2,873 | | | | 2,873 | | |
| Advertising | | 26,552 | | | | | 27,370 | | |
| Employee Travel | 143 | 166 | 166 | 166 | 166 | 171 | 171 | 171 | 171 |
| Royalties | | 26,623 | | | | | 27,271 | | |
| Bank Charges | 1,323 | 1,692 | 1,692 | 1,692 | 1,692 | 1,847 | 1,847 | 1,847 | 1,847 |
| Sales Tax | | 53,103 | | | | | 54,740 | | |
| Payroll Processing Fees | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 |
| **Total Operating Expenses** | 91,867 | 243,988 | 159,825 | 178,371 | 105,675 | 186,390 | 196,252 | 185,917 | 76,440 |
| **Operating Cash Flow** | 40,892 | -59,240 | 24,923 | 6,377 | 79,073 | 15,827 | 5,965 | 16,300 | 125,777 |
| **Ending Cash Balance - Operating** | 138,496 | 49,075 | 28,198 | 26,031 | 91,561 | 91,574 | 60,909 | 66,165 | 185,899 |

NORTH COUNTRY MANAGEMENT GROUP
90 Day Cash Collateral Budget - Scenario 8 Stores
As of June 23, 2014 - DRAFT

| | Week Begin 6/30/2014 | Week Begin 7/7/2014 | Week Begin 7/14/2014 | Week Begin 7/21/2014 | Week Begin 7/28/2014 | Week Begin 8/4/2014 | Week Begin 8/11/2014 | Week Begin 8/18/2014 | Week Begin 8/25/2014 |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate Overhead - NCMG** | | | | | | | | | |
| Management Payroll | 4,072 | 3,281 | 3,281 | 3,281 | 3,281 | 3,281 | 3,281 | 3,281 | 3,281 |
| Admin Payroll | 325 | 406 | 406 | 406 | 406 | 406 | 406 | 406 | 406 |
| HEALTH INSURANCE | | 4,386 | | | | 4,386 | | | |
| Payroll Taxes | 360 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 |
| Repair & Maintnence | | 200 | | | | 200 | | | |
| Office Expense | 180 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 |
| Training | 16 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |
| TOTAL UTILITIES | | 650 | | | | 650 | | | |
| Office Maintenance | | 300 | | | | 300 | | | |
| SALES,PROMOTION | | 50 | | | | 50 | | | |
| RENT-BUILDING & EQUIPMENT | | | | | | | | | |
| TOTAL TAXES AND LICENSES | | | | | | | | | |
| WORKER'S COMP. | 100 | | | | 100 | | | | |
| TOTAL EMPLOYEE TRAVEL | 459 | 574 | 574 | 574 | 574 | 574 | 574 | 574 | 574 |
| BANK CHARGES | 170 | 213 | 213 | 213 | 213 | 213 | 213 | 213 | 213 |
| COMPUTER SUPPORT & PROGRAMMING | 500 | 625 | 625 | 625 | 625 | 625 | 625 | 625 | 625 |
| Offcier Life Insurance | 0 | 0 | | | | | | | |
| Legal | | 27,500 | | | | 25,000 | | | |
| Accounting | | 6,670 | | | 9,170 | | | | 9,170 |
| Consulting | 24,000 | | | 7,500 | | | 5,000 | | |
| USTrustee Fees | | | 2,500 | | 500 | | | | |
| DIP Interest | 0 | | | | | | | | |
| **Total Corporate Disbursements** | 30,182 | 45,800 | 8,544 | 13,544 | 15,814 | 36,630 | 11,044 | 6,044 | 15,214 |
| Total Disbursements | 122,048 | 289,788 | 168,369 | 191,915 | 121,489 | 223,020 | 207,296 | 191,961 | 91,653 |
| | 648,581 | | | | 771,560 | | | | 713,930 |
| Total Expenses - Consolidated | 708,446 | | | | 710,375 | | | | 764,896 |
| Net Cash Flow - TOTAL | 10,710 | (105,039) | 16,380 | (7,167) | 63,260 | (20,803) | (5,079) | 10,256 | 110,564 |
| **Ending Cash Balance** | $108,314 | $3,275 | $19,654 | $12,487 | $75,747 | $54,945 | $49,866 | $60,122 | $170,685 |

NORTH COUNTRY MANAGEMENT GROUP
90 Day Cash Collateral Budget - Scenario 8 Stores
As of June 23, 2014 - DRAFT

| | Week Begin 9/1/2014 | Week Begin 9/8/2014 | Week Begin 9/15/2014 | Week Begin 9/22/2014 | Week Begin 9/29/2014 |
|---|---|---|---|---|---|
| Beginning Cash | $170,685 | $41,539 | -$18,045 | -$90,798 | -$24,391 |
| **Cash Receipts** | | | | | |
| Sales | 143,219 | 143,219 | 143,219 | 143,219 | 143,219 |
| Misc Income | 0 | 0 | 0 | 0 | 0 |
| Other - KTC DIP Loan | | | | | |
| Total Cash Receipts | 143,219 | 143,219 | 143,219 | 143,219 | 143,219 |
| **Cash Disbursements - Operations** | | | | | |
| Food cost | 109,546 | | 109,546 | | |
| Paper cost | 9,815 | | 9,815 | | |
| Crew Payroll | 28,136 | 28,136 | 28,136 | 28,136 | 28,136 |
| Management Payroll | 3,859 | 3,859 | 3,859 | 3,859 | 3,859 |
| Group Insurance | 6,669 | | | | 6,669 |
| Payroll Taxes | 6,438 | 6,438 | 6,438 | 6,438 | 6,438 |
| Uniforms | 974 | | | | 860 |
| Operating Supplies | 1,552 | 1,552 | 1,552 | 1,552 | 1,552 |
| Repair and Maintenance | 4,868 | 4,868 | 4,868 | 4,868 | 4,868 |
| Office Expense | | | 784 | | |
| Cash over/short | 105 | 105 | 105 | 105 | 105 |
| Miscellaneous | 681 | 681 | 681 | 681 | 681 |
| Training | | | 449 | | |
| Controllable - Sub Total | 172,643 | 45,639 | 166,234 | 45,639 | 53,168 |
| Utilities | 9,188 | 9,188 | 9,188 | 9,188 | 9,188 |
| Refuse | 1,448 | 1,448 | 1,448 | 1,448 | 1,448 |
| Promotion | | 7,490 | | | |
| Rent | 28,641 | | | | 26,472 |
| Taxes and Licenses | 11,546 | 9,838 | 26,057 | 12,244 | 14,444 |
| Liability Insurance | 7,589 | | | | |
| Worker's Comp Insuranse | | 2,873 | | | |
| Advertising | | 29,958 | | | |
| Employee Travel | 150 | 150 | 150 | 150 | 150 |
| Royalties | | 29,829 | | | |
| Bank Charges | 1,313 | 1,313 | 1,313 | 1,313 | 1,313 |
| Sales Tax | | 59,916 | | | |
| Payroll Processing Fees | 328 | 328 | 328 | 328 | 328 |
| **Total Operating Expenses** | 232,845 | 197,968 | 204,716 | 70,308 | 106,510 |
| Operating Cash Flow | -89,626 | -54,749 | -61,497 | 72,911 | 36,709 |
| Ending Cash Balance - Operating | 81,060 | -13,210 | -79,543 | -17,886 | 12,318 |

C:\Windsor\Prospects\NorthCountry\NCMG 2014\Bankruptcy\Projections\Budget to Actual\NCMG Cash Bdgt to Act JT - rev 0618 2(90 day reforecast).xlsCash Flow

NORTH COUNTRY MANAGEMENT GROUP
90 Day Cash Collateral Budget - Scenario 8 Stores
As of June 23, 2014 - DRAFT

| | Week Begin 9/1/2014 | Week Begin 9/8/2014 | Week Begin 9/15/2014 | Week Begin 9/22/2014 | Week Begin 9/29/2014 |
|---|---|---|---|---|---|
| **Corporate Overhead - NCMG** | | | | | |
| Management Payroll | 2,625 | 2,625 | 2,625 | 2,625 | 2,625 |
| Admin Payroll | 325 | 325 | 325 | 325 | 325 |
| HEALTH INSURANCE | 4,386 | | | | 4,386 |
| Payroll Taxes | 560 | 560 | 560 | 560 | 560 |
| Repair & Maintnence | 200 | | | | |
| Office Expense | 180 | 180 | 180 | 180 | 180 |
| Training | 16 | 16 | 16 | 16 | 16 |
| TOTAL UTILITIES | 650 | | | | |
| Office Maintenance | 300 | | | | |
| SALES PROMOTION | 50 | | | | |
| RENT-BUILDING & EQUIPMENT | | | | | |
| TOTAL TAXES AND LICENSES | | | 6420 | | |
| WORKER'S COMP | 100 | | | | 100 |
| TOTAL EMPLOYEE TRAVEL | 459 | 459 | 459 | 459 | 459 |
| BANK CHARGES | 170 | 170 | 170 | 170 | 170 |
| COMPUTER SUPPORT & PROGRAMMING | 500 | 500 | 500 | 500 | 500 |
| Officer Life Insurance | | | | | |
| Legal | 23,500 | | | | |
| Accounting | | | | 1,670 | |
| Consulting | 5,000 | | | | |
| USTrustee Fees | | | | | |
| DIP Interest | 500 | | | | 500 |
| **Total Corporate Disbursements** | 39,521 | 4,835 | 11,255 | 6,505 | 9,821 |
| Total Disbursements | 272,366 | 202,803 | 215,971 | 76,813 | 116,331 |
| Total Expenses - Consolidated | | | | | 884,283 |
| | | | | | 680,725 |
| Net Cash Flow - TOTAL | (129,147) | (59,584) | (72,752) | (24,391) | |
| | ($18,045) | ($90,798) | | | |
| **Ending Cash Balance** | $41,539 | | | 66,406 | 26,888 |
| | | | | | $2,497 |